[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 5536
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on August 27, 1970 in Fairfield, Connecticut. There are no children issue of the marriage. The plaintiff, in her complaint, and the defendant, in his cross-complaint, each seek a dissolution of the marriage and an assignment of the other's estate.
The plaintiff is 48 years of age. She graduated from Stevens College in Missouri with a Bachelor of Fine Arts degree in 1968. She is an artist and is presently attending classes in painting. She attends a different class each three months and has six classes left to complete the program. After completing the program, she hopes to paint professionally. At present she creates dry flower arrangements and sells them during holiday periods.
After graduation, the plaintiff was employed in New York City for a television packaging company. She was working there at the time of her marriage. The first three years of their marriage she did not work outside the home. In 1974 she again returned to work in New York City as a salesperson on commission selling furniture and gift items. Her earnings at that time were $20,000 per year. At that time the defendant also worked for a company in New York City and the parties commuted together for two years.
During all of this period to 1978, the plaintiff's parents helped out financially. In 1978 the plaintiff's parents gifted a two acre parcel on Hillside Road in Fairfield. Five years earlier the parties had purchased property on Hulls Farm Road for $62,500. The down payment of $12,000 was a gift from the plaintiff's parents. Shortly before this, the defendant started his own business — Incentive Marketing Services selling premium and sales incentive items. The business started initially out of the home. The plaintiff did typing, reception, telephoning and anything else she could do for the business.
The parties built a house on the Hillside Road property and sold the house on Hulls Farm Road realizing $140,000 to $150,000 on the sale. This was invested in the Hillside Road property with help, again, from the plaintiff's parents.
In December, 1983, the plaintiff presented a deed for a one CT Page 5537 half interest in the Hillside Road property to the defendant on New Years Eve, as an expression of her love and affection. Two weeks later the defendant had an attack in the middle of the night. The doctors diagnosed cancer of the kidney and operated to remove one of the defendant's kidneys. It was while the defendant was in the hospital that a woman who was working with him came to visit him in the hospital. Less than a month later the plaintiff found her and the defendant having sex in the defendant's office in the house. While the defendant denied this affair, it continued from 1983 to 1985.
By 1987 Incentive Marketing Services was doing extremely well. The parties were "flying high" and living well beyond their means. It was at this time that the parties sold their home on Hillside Road and bought a house on Harbor Road in Southport for two million four hundred thousand dollars. The property was heavily mortgaged. Shortly after, in 1989, the plaintiff's father died. This meant that the handouts from the plaintiff's father were no longer forthcoming. It had been those handouts that permitted the parties to weather their financial shortfalls. It was at this time, also, that the defendant began what the plaintiff described as excessive drinking. The business started to fail and the defendant borrowed $150,000 from the plaintiff's mother which was part of the plaintiff's inheritance from her father's estate. While the defendant maintained this was a gift, both the plaintiff and her mother testified it was a loan. The court finds it was a loan which must be paid back to the plaintiff when the defendant has the funds to do so. The court shall order that such a sum be paid by way of lump sum alimony.
In the spring of 1991, the parties were no longer able to make the payments on the mortgage and the bank foreclosed. The principal balance owed on the mortgage was $1,989,000 with interest arrearage approaching $200,000. The parties were able to execute a deed to People's Bank in lieu of foreclosure so that they avoided a deficiency judgment. Thereafter, the defendant filed for personal bankruptcy and corporate bankruptcy. He left the marital home in September, 1991.
Before the defendant left home, the plaintiff found a barn on Merwin's Lane. The parties entered an agreement to purchase this property with the defendant cosigning a mortgage to a trust established under the plaintiff's father's will and borrowing money from the plaintiff's mother. The application for this mortgage (plaintiff's exhibit N) discloses that the defendant CT Page 5538 earned $12,000 — $15,000 per month as President of Incentive Marketing, Inc. during the period 1986 to 1991 and was at present receiving $150,000 per annum as President of The Mark, a new business of the defendant's engaged in sales promotions. During the period from September, 1991 to May, 1994, the defendant gave to or for the plaintiff the sum of $5,000 per month.
Throughout the marriage, the defendant had affairs with other women. He is presently living with one Holly Werner at her home in Darien, while he is engaged in trying to develop an international business in joint ventures. His financial affidavit shows a gross annual income of $43,000 and a net monthly income of $955. He admits that Holly Werner supports him and pays for all of his extensive travels, including a trip to Russia in July, 1994, to Zurich, Switzerland, skiing in Vail, Colorado, four or five trips to Palm Beach, to the Lost Tree Club, and a trip to China. The defendant testified that most of these trips were business trips. He stopped paying the $5,000 per month to the plaintiff in May, 1994, because he claimed Holly Werner was complaining that most of the money was coming from her.
The defendant is a graduate of the University of British Columbia. He is a Canadian citizen and came to the United States in 1968 as a sales representative earning $30,000 per year. He is 49 years of age and in good health. The defendant states that in his best years, as President of Incentive Marketing, he did earn $12,000 to $15,000 per month. He stated that the $150,000 annual income at the Mark was purely fictitious. In 1991, he has stated in his bankruptcy petition that he earned $40,000 in 1989, $40,000 in 1990 and $36,000 in 1991.
The plaintiff seeks an award of alimony of $5,250 per month. Whatever award the court orders, it must be on the basis of the defendant's earning capacity[.]
Plaintiff's attorney has described the defendant as a "cad and a bounder." The court finds that he was unfaithful to his wife on numerous occasions and that he is at fault for the breakdown of the marriage. During the marriage, he lived off the plaintiff's family and is now living off the beneficence of his current love.
The plaintiff's health is somewhat troublesome. She is capable of working; however, she has arthritis in her hands and her hip. She takes Advil to relieve the pain. She has had CT Page 5539 shingles for the past three years and has a blood condition called hemochromatosis, an excess of iron in the blood. She also stated she has a lump on her breast which has not been looked at by a doctor because her medical insurance is a $2,000 deductible policy. She is currently living on $10,000 per year in gifts from her mother, funds borrowed from her mother and selling furniture piece by piece. The plaintiff's total weekly expenses are $2,000. Until March of this year, she was renting an apartment in her house and realizing $300 per week from this rental. Together with the $10,000 gift from her mother, the plaintiff can realize close to $500 per week. Her flower arrangements can also realize some income. She will experience a shortfall even with the court's alimony award and will have to earn additional income.
The husband's financial picture is also bleak. He has no assets other than a 1986 Buick wagon valued at $500 and a Bank of Darien savings account of $500. His financial affidavit exclusive of attorney's fees reports liabilities of $200,000 of which $175,000 is owed to Holly Werner. The plaintiff's financial affidavit reports liabilities of $242,500 not including her liability for legal fees. The parties have not filed income tax returns for 1991, 1992, 1993 or 1994. At the time of filing his personal bankruptcy petition, the defendant's personal liabilities amounted to $235,000. At the time of filing corporate bankruptcy, the company known as Incentive Marketing Services, Inc. had total assets of $1,500 and total liabilities of $381,000.
The defendant has an earning capacity of at least $40,000 per year. His earnings at Incentive Marketing, Inc. far exceeded this amount, and it may be that his earnings in the future will far exceed what the court finds as his current earning capacity. The court for its present orders is basing those orders upon an earning capacity of $40,000 per year and a net annual income of $34,000.[1] See Lucy v. Lucy, 183 Conn. 230, 234 (1981); Millerv. Miller, 181 Conn. 610 (1980); Hart v. Hart, 19 Conn. App. 91
(1989). Based upon the defendant's demonstrated ability to develop sources of money, it is clear that given enough time he will be able to pay the plaintiff the One Hundred Fifty Thousand ($150,000) Dollars that he owes her.
In determining the proper orders in this case, the court must consider the factors set forth in § 46b-81 and § 46b-82
of the General Statutes together with the provisions of § 46b-62. With respect to alimony and a division of the property of CT Page 5540 the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
The court has considered all of the criteria of §§ 46b-81
and 46b-82 and 46b-62 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account",Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v.Weiman, 188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v.Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307,313-14 (1991).
The court, in addition to the foregoing findings, finds as follows: CT Page 5541
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage upon the plaintiff's complaint. The defendant's cross-complaint is dismissed.
2. The defendant shall pay to the plaintiff, during the lifetime of the parties, periodic alimony in the amount of Fifteen Hundred ($1500) Dollars per month, in advance, retroactive to May 1, 1994, until the remarriage of the plaintiff. As of June 1, 1995, this results in an arrearage of Nineteen Thousand Five Hundred ($19,500) Dollars. Said arrearage shall be paid at the rate of Seven Hundred and Fifty ($750) Dollars per month commencing June 1, 1995 until fully paid.
3. The defendant shall pay to the plaintiff lump sum alimony in the amount of One Hundred and Fifty Thousand ($150,000) Dollars. Said sum shall be payable on June 1, 1998 in installments in the amount of Fifty Thousand ($50,000) Dollars upon each successive first of June until fully paid. Said payments shall not be considered periodic alimony for tax purposes but shall be considered as support and maintenance for the plaintiff and as lump sum alimony pursuant to § 46b-82 of the General Statutes.
4. The defendant shall indemnify the plaintiff from all liability and expenses, including attorneys' fees, arising out of a Shawmut Bank credit card, account number 5325-8020-1022-1295.
5. The plaintiff shall retain as wholly hers the real property located at 1020 Merwin's Lane in Fairfield, Connecticut. She shall indemnify and hold harmless the defendant from any claim or demand upon the mortgage upon said real property.
6. The defendant shall be wholly responsible for any tax liability of the parties for the years 1991, 1992, 1993 and 1994 and shall indemnify and hold harmless the plaintiff from any claims or demands thereon. CT Page 5542
7. The tangible personal property at 1020 Merwin's Lane in Fairfield shall be the property of the plaintiff, free of any claim or demand by the defendant. Should there be any personal belongings or effects belonging to the defendant, the plaintiff shall pack up such items and make them available to the defendant within three (3) weeks of this date. Such other tangible personal property in the possession of each of the parties shall be the property of the possessor, free of any claim or demand by the other party.
8. Except as otherwise set forth herein, such assets as are set forth in each of the parties' financial affidavits shall be the property of the reporting party, free of any claim or demand by the other party.
9. Each of the parties shall pay their own liabilities.
10. Each of the parties shall be responsible for maintaining his or her own medical insurance as each may so elect.
11. The plaintiff shall be entitled to maintain such life insurance on the life of the defendant as she may choose to insure the provisions herein for her benefit. The defendant shall cooperate to provide medical information to the plaintiff if requested for such purpose and to make himself available for such physical examinations as may be required by any life insurance company.
12. Each of the parties shall be obligated to pay his or her own attorney's fees.
13. The plaintiff shall have restored to her her maiden name of Candace Raymond and shall hereafter be known by such name.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE